Bogue *v.* Bennett.

BOGUE ET AL. *v.* BENNETT, BY HIS NEXT FRIEND.

[No. 19,186. Filed April 18, 1901.]

APPEAL AND ERROR.—*Bill of Exceptions.*—A bill of exceptions containing the instructions is properly in the record where the motion for a new trial was overruled April 7, 1899, and ninety days time given to file bill of exceptions, the bill filed May 29, 1899, copied in the transcript with the statement over the signature of the trial judge that it was tendered to and signed by him on April 7, 1899. *p. 479.*

MUNICIPAL CORPORATIONS.—*Streets.—Regulation of Vehicles.—Traction-Engines.*—A municipal corporation has no power to pass an ordinance prohibiting the running of traction-engines upon the streets and alleys, and such an ordinance is void. *pp. 480-486.*

From the Grant Circuit Court. *Reversed.*

*O. L. Cline, J. C. Blacklidge, C. C. Shirley* and *C. Wolf,* for appellants.

*L. J. Kirkpatrick, J. F. Morrison* and *T. C. McReynolds,* for appellee.

MONKS, J.—Appellee, Claude Bennett, was injured in 1898, while riding a bicycle on a public street in the city of Kokomo, by colliding with a traction-engine owned by appellant Gwinn, and operated by his employe Bogue. The complaint is in four paragraphs. The first, second, and fourth paragraphs are predicated upon the alleged negligence of appellants and the want of contributory negligence on the part of the injured party. The second paragraph charges a wilful injury. It is alleged in said first paragraph that said traction-engine was run on said street of said city without right, and without having any person in advance of said engine not less than fifty yards to warn all persons approaching said engine who might be in charge of horses, of the proximity of said engine, and in violation of city ordinance 383 of the city of Kokomo, which prohibited the running of traction-engines and other vehicles propelled by steam on and over the streets and alleys of said city. The

third paragraph contains substantially the same allegations concerning the violation of §2044 Burns 1894 (Acts 1889, p. 428) and the violation of said city ordinance.  The trial of the cause resulted in a verdict and judgment against appellants.  The errors assigned and not waived by failure to argue the same call in question the action of the court in overruling appellants' motion for a new trial.

It is first insisted by appellants that the court erred in admitting in evidence ordinance number 383 of the city of Kokomo, which prohibits the running of traction-engines or other vehicles propelled by steam on the streets and alleys of said city, for the reason that the city council had no power to enact said ordinance, and therefore the same was invalid.  Appellee insists that this question cannot be considered for the reason that the bill of exceptions containing the evidence and the objection of appellants to the introduction of said ordinance in evidence and the ruling of the court thereon is not properly in the record.  The question of the validity of said ordinance is presented by instruction nine given by the court to the jury, over the objections of appellants, which is also assigned as a cause for a new trial. We need not, therefore, decide whether or not said bill of exceptions is in the record.  The record shows that the bill of exceptions containing the instructions was properly filed May 29, 1899.  The motion for a new trial was overruled April 7, 1899, and ninety days time given appellants within which to file bills of exceptions.  Said bill of exceptions is copied into the transcript and contains the statement over the signature of the trial judge that it was tendered to and signed by him on April 7, 1899.  This shows that the bill of exceptions containing the instructions was filed within the time given by the court, and that it was signed by the trial judge before it was filed.  This fully complies with all the statutory requirements.  §§638, 641 Burns 1894, §§626, 629 R. S. 1881 and Horner 1897; *Robinson v. Dickey,* 143 Ind. 205, 210; *Ayers v. Armstrong,* 142 Ind. 263.

Said instruction nine reads as follows: "If you find from the evidence that at the time of the injury complained of there was a city ordinance in full force and effect in the city of Kokomo, which provided that the running of traction-engines and other similar vehicles propelled by steam over and upon the streets and alleys of such city was prohibited, and fixed a penalty for the violation thereof; and if you further find that the defendant Bogue, in violation of such ordinance, was running a traction-engine propelled by steam over and upon a public street in such city at the time of the alleged injury, and that the defendant Bogue was at such time in the service and employment of the defendant Gwinn, and acting within the line and scope of such duty and employment, as charged in the complaint, then the court instructs you that the running of such engine in violation of said ordinance would be an unlawful act, and would constitute negligence *per se* on the part of the defendant; and if you further find from the evidence that such negligence, that is, the propulsion of said traction-engine upon and along such street by steam, instead of horse or other power permitted by said ordinance, was the proximate cause of the injury to plaintiff, without which the injury of which plaintiff complains would not have resulted; and further find that plaintiff was not guilty of negligence contributing to said injury, then it would be your duty to find for the plaintiff". If the ordinance prohibiting the running of traction-engines or other vehicles propelled by steam on the streets and alleys of the city of Kokomo is invalid for the reason that the city had no power to pass the same, said instruction is clearly erroneous.

In this State municipal corporations possess and can exercise only such powers as are granted by the legislature in express words and those necessarily or fairly implied or incident to the powers expressly granted and those essential to the declared purposes and objects of the corporation. No incidental powers can be implied except such as are

Bogue *v.* Bennett.

essential to the accomplishment of the purposes of their creation and for their continued existence. Doubtful claims to power or any doubt or ambiguity in the terms used by the legislature are resolved against the corporation. It is also settled law that where the legislature in terms confers upon a municipal corporation the power to pass ordinances of a specified nature and character, and with precision defines the details of the same, and prescribes the penalties that may be imposed, if the power thus granted be not in conflict with the Constitution, an ordinance within the powers granted, prescribing penalties within the designated limits, can not be set aside by the courts even if they deem it unreasonable or against public policy. But where the power to legislate upon a given subject and the details of such legislation are not prescribed, then the ordinance passed pursuant thereto must be a reasonable exercise of the power, or it will be pronounced invalid. In other words, an ordinance expressly authorized by specific and definite legislative authority will be upheld unless it conflicts with the Constitution, while an ordinance which it is sought to uphold by virtue of the incidental powers of such municipal corporation, or under a general grant of authority, will be declared invalid, unless it be reasonable and fair and not arbitrary and oppressive. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 146 Ind. 421, 35 L. R. A. 684, and cases cited.

It is contended by appellee that the power to pass said ordinance was granted by the following provisions of §§3541, 3623 Burns 1894. Section 3541 provides that the common council "shall have the additional powers herein permitted, and may make and publish by-laws and ordinances necessary to enforce the same. * * * Twelfth. To regulate the use of coaches, hacks, drays and other vehicles for the transportation of passengers, freight or other articles, to or from points within the city for hire or pay." Section 3623, *supra,* provides that "The common

council shall have exclusive power over the streets, highways, alleys, and bridges within such city."

The provisions of the twelfth clause of §3541, *supra,* give no authority to pass an ordinance prohibiting the running on the streets and alleys of said city of all vehicles propelled by steam. That clause only grants authority to regulate the vehicles described, when used for the purposes mentioned therein. There is no statute to which our attention has been called, and we know of none, which, in express words, confers upon the common council of cities the power to pass an ordinance prohibiting the running upon the streets and alleys of vehicles propelled by steam. It is not necessary, therefore, to decide as to the power of the legislature to grant such authority to municipal corporations.

Can the power to pass such an ordinance be fairly implied from those expressly granted, or is such power essential to the declared objects and purposes of the corporation, or can such ordinance be sustained under the general grant of authority over the "streets, highways, and alleys"? It is evident that the power to pass such ordinance was not essential to the accomplishment of the purposes for which such municipal corporations were created, nor for their continued existence. Said ordinance was not, therefore, authorized by any of the implied powers possessed by said city. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 146 Ind. 422, 35 L. R. A. 684.

Does the general grant of authority over the streets, highways, alleys, and bridges, given by §3623, *supra,* authorize the enactment of such an ordinance? To be valid under such general grant of power, the ordinance must be a reasonable exercise thereof. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point, supra.* Highways and streets are not for the exclusive use of vehicles propelled by animal power, nor are travelers confined to the use of such power and ordinary carriages upon highways. The use of any new and improved means of locomotion must be deemed to have been con-

templated when the highways and streets were laid out or dedicated, whenever it is found that the general benefit requires it, and such new means of locomotion cannot be excluded therefrom merely because their use may tend to the inconvenience or even to the injury of those who continue to use the highways and streets by former methods. This was clearly recognized by the supreme court of Illinois in 1859 in the case of *Moses* v. *Pittsburgh, etc., R. Co.*, 21 Ill. 515. The court said: "To say that a new mode of passage shall be banished from the streets, no matter how much the general good may require it, simply because streets were not so used in the days of Blackstone, would hardly comport with the advancement and enlightenment of the present age. Steam has but lately taken the place, to any extent, of animal power for land transportation, and for that reason alone, shall it be expelled from the streets? For the same reason camels must be kept out, although they might be profitably introduced." In 1876, the same rule was declared in *Macomber* v. *Nichols*, 34 Mich. 212, which was an action to recover for an injury occasioned by the plaintiff's horse being frightened by a traction-engine on the public highway. The court, by Cooley, J., said: "Persons making use of horses as the means of travel or traffic by the highways have no rights therein superior to those who make use of the ways in other modes. It is true that locomotion upon the public roads has hitherto been chiefly by means of horses and similar animals, but persons using them have no prescriptive rights, and are entitled only to the same reasonable use of the ways which they must accord to all others. Improved methods of locomotion are perfectly admissible, if any shall be discovered, and they cannot be excluded from the existing public roads, provided their use is consistent with the present methods.

A highway is a public way for the use of the public in general, for passage and traffic without distinction. *Starr* v. *Chicago, etc., R. Co.*, 24 N. J. L. 592. The restrictions

upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to when they are only such as are incident to a reasonable use under impartial regulations. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods; and it cannot be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them; and if the law should preclude the adaptation of the use to the new methods, it would defeat, in greater or less degree, the purpose for which highways are established. * * * Horses may be, and often are, frightened by locomotives in both town and country, but it would be as reasonable to treat the horse as a public nuisance from his tendency to shy and be frightened by unaccustomed objects, as to regard the locomotive as a public nuisance from its tendency to frighten the horse. The use of the one may impose upon the manager of the other the obligation of additional care and vigilance beyond what would otherwise be essential * * *. If one in making use of his own means of locomotion is injured by the act or omission of the other, the question is not one of superior privilege, but it is a question whether, under all the circumstances, there is negligence imputable to some one, and if so, who should be accountable for it."

In *Wabash, etc., R. Co.* v. *Farver,* 111 Ind. 195, 199, decided in 1887, this court by Mitchell, J., said: "Road engines propelled by steam, and portable engines operated by steam, have become familiar in every agricultural community. To declare that their use near, or their passage

over, a public highway constitutes a nuisance, would be practically to prohibit their use in the manner in which they are customarily employed and moved from place to place. It must be supposed that horses of ordinary gentleness have become so familiar with these objects as to be safe, when under careful guidance. See, also, Cooley on Torts (2nd ed.) 734-736. That highways and streets were not for the exclusive use of vehicles propelled by animal power, and that steam power might be used to propel vehicles thereon was clearly recognized by the court in the case last cited, and by the legislature in the act of 1889 (Acts 1889, p. 428, being §§2044, 2045, 2046 Burns 1894) regulating the manner of running traction or road engines on the public highways, streets, and alleys of incorporated towns and cities. Said act reads as follows: "§1. Any person or owner of a traction or road engine shall, while using the said engine on any public highway, street or alley of any incorporated town or city, send some person in advance of said engine, not less than fifty yards, to warn all persons approaching, who are in charge of a horse, team or teams, of the proximity to such engine. §2. And it shall be the duty of the engineer in charge of said engine, or the owner thereof, upon the approach of said horse, team or teams, to drive said engine to one side of the road or street when practicable, and to stop said engine until said horse, team or teams have passed said engine, and the whistle of said engine shall not be sounded while said horse, team or teams are passing. §3. Any person or persons violating any provisions of this act shall be deemed to be guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not less than $5 and not exceeding $50."

Incorporated cities and towns in this State have the power to regulate public travel upon the streets, so as to make them reasonably safe for those who go upon them on foot or in vehicles, and to enact ordinances for the protection of life, health, and property, and may have the power to prohibit the use of certain streets for certain purposes and by

certain classes of vehicles; yet it is evident that they have no authority, under their implied powers, or under the general grant of power over the streets and alleys, to prohibit traction-engines or other vehicles not propelled by animal power from using all the streets. Such an ordinance is not a reasonable exercise of such power over the streets. Appellee cites cases which hold that a municipal corporation has power to "prescribe the motive power to be used in moving street cars in such corporations, and that when it prescribes one kind of power the company cannot use another." This power results from the fact that a street railroad cannot be constructed on the streets of a town or city without the consent of the governing body thereof, which may in its discretion refuse such request, or grant it on such conditions as it deems proper, one of which may be that it shall only use a designated motive power. Elliott's Roads and Streets (2nd ed.) §§736, 743. But vehicles, whether moved by animal, steam, or other power, which do not require a specially constructed track, may be run upon the streets and alleys of a municipal corporation, without first obtaining the consent of the governing body thereof. See Cooley on Torts (2nd ed.) 734, 735. It is manifest, therefore, that the cases holding that municipal corporations may prescribe the motive power to be used in moving street cars are not applicable here.

It is true, as insisted by appellee, that when the evidence is not in the record this court will not reverse a judgment on an instruction given, unless it would not be correct under any evidence that could be given under the issues. *Wenning* v. *Teeple,* 144 Ind. 189, 194. From what we have already said, it is evident that said instruction would not have been correct under any evidence that might have been given under the issues. It follows that the court erred in overruling the motion for a new trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.