THE SCHOOL CITY OF BRAZIL *v.* RUPP.

[No. 15,672.  Filed November 3, 1937.]

*Louis B. Ewbank,* and *Miller & Miller,* for appellant.

*Rawley & Stewart, Harvey L. Fisher,* and *Hottel, Mote & Smith,* for appellee.

KIME, J.—Appellee brought this action by a complaint in one paragraph against the appellant school city to recover damages for a breach of her contract as a "tenure teacher" in the school year of 1933 and 1934. To this complaint the appellant filed a general denial and a second paragraph alleging that the appellee's contract had been cancelled by the appellant in conformity with the statute, to which appellee replied in general denial. Trial was had on these issues and there was a finding for the appellee in the sum of $1,100.00 and costs and a judgment was entered accordingly.

The errors assigned are the overruling of the motion for new trial and the refusal of the court to permit an additional paragraph of answer to be filed during the trial. The grounds of the motion for new trial were that the decision of the court was not sustained by sufficient evidence, that it was contrary to law, and that the damages were excessive in that the assessment of the amount of the recovery was too large, and that it was error to refuse to permit said additional paragraph of answer to be filed.

The evidence most favorable to appellee was that she had been a teacher in the schools of appellant since 1902 teaching every year until the time the contract was breached; that she taught under contract each and every year and that she held a life license to teach the primary grades, which she had taught during all of these years. That on April 6, 1933, the school board at their meeting unanimously agreed, according to the minutes, that because of the economic conditions cer-

tain teachers would not be offered positions for the next year and directed the superintendent to notify them that they would not be offered positions. The superintendent did notify the appellee in the following manner:

"April 7, 1933,

"Miss Caroline Rupp,
"Brazil, Indiana.
"My dear Miss Rupp:

"Because of present economic conditions the Board of Education finds it necessary to reduce the teaching force in the Brazil City Schools and for that reason will not be able to offer you a teaching position for next year.

"Am writing now with the thought that you may wish to secure a position elsewhere for next year. I shall be glad to render whatever assistance I can in helping you secure a position elsewhere.

"The Board will be in regular session May 10 at which time they will give final consideration to all teachers contracts.

Yours very truly,

CHAS. P. KELLER,
Supt. City Schools."

Following this the appellee immediately consulted a lawyer and gave him the letter which she had received from the superintendent, whereupon the lawyer caused the records of the school board to be inspected and these records at that time disclosed that the board was not offering certain teachers positions because of the economic conditions. The lawyer was then told by the superintendent that the minutes were complete and contained all the action of the board. Thereupon the lawyer advised her by letter that under a recent case (*Barnes* v. *Mendenhall* [1932], 98 Ind. App. 229, 183 N. E. 556) that removal of a tenure teacher could not be affected

in this manner. Upon May 1, 1933, the appellee wrote to the superintendent asking that she be appointed to a position in the schools for the next school year and enclosed a copy of the letter received from her attorney.

It further appears from the duly recorded minutes that on April 6, 1933, the board met and on recommendation of the superintendent it discussed the teachers and salaries for the next school year and unanimously agreed again that because of the economic conditions certain teachers could not be offered positions among whom was the appellee. On April 11, 1933, the board met in special session and certain teachers were chosen and their salaries fixed and no further business was transacted at that meeting. It also appears that on May 10, 1933, the board met in special session, the minutes of the previous meeting were read and approved and a resolution was unanimously passed confirming the non-appointment of certain teachers as of the action taken on April 6 and the appointment of the teachers as of April 11.

On the day after receiving the letter from the school superintendent the appellee talked to the president of the board and asked why she was singled out as one to whom the board would not offer a contract for the next year and reminded him that she was a tenure teacher. He replied that they had to reduce the force and because she did not live in Brazil she was one of those omitted. She specifically asked him if there had been any complaint concerning her work and attitude and he told her that there was none. In the following September the board caused to be entered upon its records what they denominated a *nunc pro tunc* entry which they said was being entered for the purpose of correcting and amending the minutes of the meeting held on May 10, 1933. Such entry set out the letter sent by the superintendent to the appellee and also set out a pur-

ported letter sent to appellee on May 2. 1933, by the superintendent, to the effect that he had given her a copy of the school law underlining certain portions of the tenure law and continuing to the effect that no request for a statement of the reasons for the cancellation of her contract had been received from the appellee, she having been charged with incompetency and insubordination, the board proceeded to hear evidence and having heard all the evidence and the recommendation of the superintendent found that the appellee had been incompetent and guilty of insubordination, and by unanimous vote they cancelled her contract, all of which was specifically and definitely set out in the minutes, following which was an order that all of this be set out as of May 10, 1933, *nunc pro tunc.*

The first question arises on the refusal of the court to allow the filing of the third paragraph of answer and this is also presented under the ground of the motion for new trial. This third paragraph of answer was to the effect that the appellee had accepted an annuity from the teachers' retirement fund and that because of such circumstance had ceased to be in the employ of the public schools. This act, being the Act of 1921, ch. 256, §28-4506 Burns 1933, §6734 Baldwin's 1934, provides that teachers could withdraw certain amounts from the fund, depending upon the amount they had paid in, and that this amount could be repaid to the fund with interest whereupon the teacher thereafter was entitled to the benefits as originally contemplated. It might be said that she had ceased to be in the employ of the public schools but she had not ceased to be entitled to be in the employ of the public schools. The refusal of the court to allow this third paragraph of answer to be filed was not harmful error, it appearing that the appellee testified that she had received this money from the teachers' retirement fund.

Under the grounds of the motion for new trial that the decision was not sustained by sufficient evidence; that it was contrary to law; that the recovery was too large and that the damages were excessive the appellant contends that the appellee did not establish that she was a tenure teacher. This seems to be the most inconsistent position that could be taken since the appellant insists that they believe their action cancelled appellee's indefinite contract, however, the appellee introduced evidence to the effect that she had taught in Brazil successively since 1902 under contract. The Acts of 1921, ch. 91, p. 195, §28-4303 Burns 1933, §5990 Baldwins 1934, provide that after the taking effect of that act "all contracts between teachers and school corporations shall be in writing." The appellee here taught the necessary succeeding school years and the presumption is that the officers of the school corporation did their duty and if they did the appellee in the year 1932 had a written contract and there is sufficient evidence from which the trial court was warranted in concluding that she did have such contract as the statutes made mandatory. Under the act of 1927, ch. 97, p. 259, §28-4307 Burns 1933, §6003 Baldwins 1934, any person who has served under contract as a teacher for five or more successive years, who shall thereafter enter into contract for further service with such corporation thereupon becomes a permanent teacher. The evidence is undisputed that following the passage of this act she taught for five or more successive years and thereafter entered into a further contract. This act further provides that such indefinite contract shall remain in force and from the evidence of the appellee the trial court was warranted in concluding that it did and that she was what is commonly known as a tenure teacher.

The appellant contends that the letter sent to the ap-

pellee by the school superintendent was a notice to her that the school corporation would consider the cancellation of her contract. Both parties in their briefs have proceeded upon the theory that the Act of 1933 governed this board but this attempted cancellation took place prior to the time the act of 1933 was in effect and, consequently, this case must be determined by the existing law which was the act of 1927, *supra*. However it might be well to say that there is no difference in the two acts which affect or could have affected this case. The Act of 1927, so far as is applicable, is as follows: "Any indefinite contract with a permanent teacher as defined in section 1 of this act may be cancelled only in the following manner: Not less than thirty days nor more than forty days before the cancellation of any such contract, such teacher shall be notified in writing of the exact date, time when and place where such consideration is to take place; . . ." The letter sent to the appellee did not conform with the statute in that it did not tell her that the board proposed to consider the cancellation of her contract. Furthermore it did not specify the exact time when nor the exact date nor the exact place where the consideration of the cancellation of her indefinite contract would take place. This statute provides a method whereby the vested rights of the appellee may be taken away and such statute must be strictly construed to preserve the rights of the teacher. From the evidence and the acts of the school board and superintendent the trial court was warranted in assuming and concluding, as he evidently did, that the school board was endeavoring to oust this teacher in a method which did not indicate good faith on its part. The trial court saw the witnesses and had the opportunity of observing their demeanor while testifying and from the decision reached by him it is evident that he did not place much reliance upon the testimony offered by some

of them. From the evidence most favorable to the appellee it is apparent beyond all shadow of doubt that she was entitled to prevail here both under the law and the evidence.

The appellant does not, in his propositions, points and authorities, discuss the questions that the recovery was too large and the damages were excessive, and if what is attempted to be set forth under the fourth specification above mentioned has any merit, it is sufficient to say that the evidence sustains the finding in all particulars and, therefore, the judgment of the Putnum Circuit Court is in all things affirmed.